UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMERICAN CONTRACTORS INDEMNITY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **No. 20-2860** |
| **GALAFORO CONSTRUCTION, LLC, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is plaintiff American Contractors Indemnity Company's ("ACIC") motion[1] for summary judgment against defendant Paul Galaforo. The motion was submitted on December 8, 2021, and Paul Galaforo has filed no opposition to date. ACIC requests that the Court enter judgment in its favor and against Galaforo in the amount of $3,127,560.79, plus all additional losses, costs, expenses, consulting fees, and attorney fees incurred by ACIC as a result of having issued certain surety bonds, for interest from the date each payment was made, and for all costs of these proceedings.[2] The motion is granted, as set forth below.

## I. BACKGROUND

### A. Factual History

Defendants Paul Galaforo and Galaforo Construction obtained surety bonds from ACIC in connection with two projects in which defendant served as contractor. Specifically, Paul Galaforo and Galaforo Construction entered into an agreement with Plaquemines Parish to serve as contractor for the construction of the New Port

---

[1] R. Doc. No. 36.
[2] R. Doc. No. 36-1, at 1.

Sulphur Public Library Project (the "Plaquemines Project"), and contracted with the City of Westwego to serve as contractor for the Louis Marrero Park Improvements Project (the "Westwego Project").[3] The bonds issued in connection with the Plaquemines Project (the "Plaquemines Bonds") had a penal sum of $3,113,000.00.[4] The bonds issued in connection with the Westwego Project (the "Westwego Bonds") had a penal sum of $554,000.00.[5]

In order to induce ACIC to issue the Plaquemines and Westwego Bonds, Paul Galaforo and Galaforo Construction executed a General Indemnity Agreement ("the Indemnity Agreement") in favor of ACIC on January 22, 2018.[6] The pertinent provisions of the Agreement are as follows:

> III. INDEMNITY, EXONERATION AND HOLD HARMLESS
> The Principals and Indemnitors shall, jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond; (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or

---

[3] *Id.* ¶¶ 6, 22.
[4] *Id.* ¶ 7; R. Doc. No. 36-4.
[5] R. Doc. No. 27, ¶ 23; R. Doc. No. 36-11.
[6] R. Doc. No. 27, ¶ 5.

advance of any monies to any Principal or Indemnitor; or (ix) the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise. The obligations provided for in this paragraph are without regard to whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection.

The Principals and Indemnitors further agree that they shall be liable for, and that the Surety shall be entitled to charge and recover for, any and all payments made by the Surety in the good faith belief that: (1) any Principal or Indemnitor is or has been in default under this Agreement; (2) the Surety was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of the Surety's rights or interests or to avoid or lessen the Surety's actual or alleged liability. The Surety shall be entitled to the rights and remedies set forth in this Section III and to all of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by the Surety in good faith. The foregoing obligations shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.
[. . . .]

VIII. SETTLEMENTS
The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract.
[. . . .]

IX. REIMBURSEMENT
In the event of any payment by the Surety, an itemized, sworn statement of the amount of any such payment, invoice(s) or other evidence of such payment shall be prima facie evidence of the fact and the amount of such payment and, in the absence of actual fraud, shall be final, conclusive and binding upon any Principal or Indemnitor in any claim, suit or other proceeding by the Surety.
[. . . .]

> XVII. . . . CHOICE OF LAW
> [. . . .]
> [T]his Agreement shall be construed and enforced in accordance with the laws of the state in which the Surety files the litigation, without regard to principles of conflict of laws.[7]

On June 7, 2019, Plaquemines Parish informed ACIC and Galaforo Construction that Galaforo Construction was in material breach of its contract with Plaquemines Parish (the "Plaquemines Contract") and demanded that ACIC perform its obligations under the Plaquemines Bonds.[8] On June 19, 2019, Plaquemines terminated the Plaquemines Contract as a result of Galaforo Construction's failure to "complete the work in a timely manner, according to the terms of the agreement."[9] The letter further demanded that ACIC perform its obligations under the bonds and asserted claims against ACIC for liquidated damages for delays in construction and increased costs and fees.[10]

ACIC retained Colby Consulting, Inc. ("Colby Consulting") to investigate the Plaquemines Project and the claims asserted against the bonds, and to obtain bids for the completion of the Plaquemines Contract.[11] ACIC ultimately paid Colby Consulting $22,686.31 for these services.[12]

ACIC accepted a $3,918,000.00 bid from CDW Services, LLC for completion of the contract, and tendered CDW Services, LLC as the completion contractor.[13] ACIC

---

[7] R. Doc. No. 36-3.
[8] R. Doc. No. 27, ¶ 9; R. Doc. No. 36-5.
[9] R. Doc. No. 27, ¶ 10; R. Doc. No. 36-6.
[10] R. Doc. No. 27, ¶ 11.
[11] *Id.* ¶ 12; R. Doc. No. 19-3.
[12] R. Doc. No. 27, ¶ 18; R. Doc. No. 36-9.
[13] R. Doc. No. 27, ¶ 14; R. Doc. No. 36-7.

4

paid the Parish $1,636,923.95 in settlement of all claims, disputes, and obligations arising out of the Plaquemines Contract,[14] and also paid $657,493.89 to settle claims arising from Galaforo Construction's failure to pay various subcontractors and/or suppliers.[15] Finally, ACIC retained the law firm of Simon, Peragine, Smith & Redfearn, LLP ("SPS&R") to represent ACIC with regard to the claims asserted against the Plaquemines Bonds, and has paid SPS&R $76,873.44 for expenses and attorneys' fees for its handling of these claims.[16] ACIC alleges that the total losses, costs, and expenses, including attorney fees and consulting fees, incurred by ACIC as a result of claims arising against the Plaquemines Bonds is $2,394,710.66.[17]

A similar series of events occurred with respect to the Westwego Project. On June 6, 2019, the City of Westwego sent a letter to Galaforo Construction, providing formal notice of default and termination of the Westwego Contract, citing Galaforo Construction's "failure to complete the project in accordance with the Contract and failure to make payments to Subcontractors."[18] On the same date, Westwego formally notified ACIC of the same, and demanded that ACIC perform its obligations under the Westwego Bonds.[19] Westwego also asserted claims against ACIC for liquidated damages, increased engineering costs and fees, and for the correction of various alleged deficiencies in the work performed by Galaforo Construction.[20]

---

[14] R. Doc. No. 27, ¶ 14.
[15] R. Doc. No. 27, ¶ 17; R. Doc. No. 36-8.
[16] R. Doc. No. 27, ¶ 19; R. Doc. No. 36-10.
[17] R. Doc. No. 27, ¶ 21.
[18] R. Doc. No. 27, ¶ 25; R. Doc. No. 36-12.
[19] R. Doc. No. 27, ¶ 26; R. Doc. No. 36-13.
[20] R. Doc. No. 27, ¶ 27; R. Doc. No. 19-3.

ACIC retained Colby Consulting to investigate the claims arising from the Westwego Project and to obtain bids for the performance of work pursuant to Galaforo Construction's contract with Westwego.[21] ACIC ultimately paid Colby Consulting $7,425.50 for its services relating to the Westwego Bonds.[22] ACIC also retained the law firm of SPS&R to represent ACIC regarding claims asserted against the Westwego Bonds and the enforcement of ACIC's rights pursuant to the Indemnity Agreement; ACIC has incurred attorneys' fees and costs arising from these claims totaling $104,437.48 to date.[23]

ACIC executed a completion contract with VPG Construction, whereby VPG Construction agreed to perform the work required under Galaforo Construction's contract with Westwego for the price of $312,853.74; this amount was subsequently increased to $320,780.10 due to $7,926.36 in change orders.[24] To date, ACIC has paid VPG Construction $317,580.10.[25]

ACIC reached a settlement agreement with Westwego resolving all disputes and obligations between Westwego and ACIC arising out of the Westwego Project; pursuant to the agreement, ACIC paid Westwego $105,000.00 and Westwego paid ACIC $25,942.35.[26] Additionally, ACIC paid $223,691.66 to settle claims arising from Galaforo Construction's alleged failure to pay certain subcontractors and/or suppliers

---

[21] R. Doc. No. 27, ¶ 28; R. Doc. No. 19-3.
[22] R. Doc. No. 27, ¶ 38; R. Doc. No. 36-19.
[23] R. Doc. No. 27, ¶ 39; R. Doc. No. 36-20.
[24] R. Doc. No. 27, ¶¶ 32, 33; R. Doc. Nos. 19-3, 36-15.
[25] R. Doc. No. 27, ¶ 34; R. Doc. No. 36-16.
[26] R. Doc. No. 27, ¶ 35; R. Doc. No. 36-17.

in connection with the Westwego Project.[27]

ACIC states that the total losses, costs, and expenses, including attorney fees and consulting fees, incurred to date by ACIC as a result of the Westwego Bonds is $732,850.13.[28] Thus, the combined costs to ACIC arising from claims asserted against the Plaquemines and Westwego Bonds amount to $3,127,560.79.[29]

### B. Procedural History

On October 20, 2020, ACIC filed a complaint against Paul Galaforo and Galaforo Construction seeking to recover all costs, additional losses, attorneys' fees, costs, and expenses incurred as a result of claims and litigation arising from the Plaquemines and Westwego Bonds.[30] Galaforo Construction agreed to waive service of the complaint, and an executed waiver for Galaforo Construction was filed on February 11, 2021.[31] Paul Galaforo, *pro se*, subsequently filed an answer on behalf of himself and Galaforo Construction.[32] The Court informed Galaforo that corporations must be represented by licensed counsel, and ultimately gave Galaforo Construction

---

[27] R. Doc. No. 27, ¶ 37; R. Doc. No. 36-18.
[28] R. Doc. No. 27, ¶ 41; R. Doc. No. 19-3.
[29] R. Doc. No. 27, ¶ 42.
[30] R. Doc. No. 1. The complaint was subsequently amended. R. Doc. No. 27.
[31] R. Doc. No. 5.
[32] R. Doc. No. 8.

until July 1, 2021 to retain counsel.[33] Galaforo Construction did not do so, and ACIC moved[34] for default judgment against Galaforo Construction. The Court granted the motion and entered judgment accordingly.[35] ACIC now moves for summary judgment against Paul Galaforo, raising the same claims that it raised in its motion for default judgment against Galaforo Construction.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. Proc. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts

---

[33] On April 2, 2020, the Court issued an order stating that corporations can only be represented by licensed counsel and directing Galaforo Construction to retain counsel no later than April 16, 2021. R. Doc. No. 9. The Court subsequently extended this deadline to May 14, 2021. R. Doc. No. 11. No counsel for Galaforo Construction made an appearance by May 14. On June 2, 2021, the Court ordered Galaforo Construction to show cause for failure to comply with the Court's order to retain counsel. R. Doc. No. 12. At a June 22, 2021 show cause hearing, the Court ordered Galaforo Construction to retain counsel, with counsel to enter an appearance no later than July 1, 2021. R. Doc. No. 13. The Court noted that failure to comply may result in a request for entry of default by the plaintiff. *Id.*
[34] R. Doc. No. 19.
[35] R. Doc. Nos. 29, 30.

showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted).

Unopposed motions for summary judgment "cannot be granted simply because there is no opposition, but a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Homelife in the Gardens, LLC v. Landry*, No. 16-15549, 2018 WL 341703, at *2 (E.D. La. Jan. 9, 2018) (Africk, J.) (quoting *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435 (5th Cir. 2014) (per curiam)).

### III. LAW AND ANALYSIS

ACIC filed this action in federal court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332.[36] "In diversity actions, 'federal courts must apply the choice of law rules in the forum state in which the court sits.'" *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, No. 20-1470, 2021 WL 1600247, at *4 (E.D. La. Apr. 23, 2021) (Lemelle, J.) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)).

"It is well established that where parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given

---

[36] R. Doc. No. 27, ¶ 3.

effect, unless there is statutory or jurisprudential law to the contrary or public policy considerations justifying the refusal to honor the contract as written." *Barnett v. American Const. Hoist, Inc.*, 91 So.3d 345, 349 (La. App. 1st Cir. 2012)).

Louisiana law governs the contractual claims in this action. The Indemnity Agreement states that it "shall be construed and enforced in accordance with the laws of the state in which the Surety files the litigation."[37] Because this Court's forum state is Louisiana, wherein choice-of-law provisions are presumptively valid under state law, *see Daniels v. Int'l Paper Co.*, 245 So. 3d 180, 184 (La. App. 2d Cir. 2017) (citing *Barnett*, 91 So.3d at 349), the Court applies Louisiana law to ACIC's contractual claim.

Under Louisiana law, "[a]s in any other contract . . . it is the terms of the indemnity agreement that govern the obligations of the parties." 6 La. Civ. L. Treatise, Law of Obligations § 11.29 (2d ed.) (citing *Meloy v. Conoco, Inc.*, 504 So.2d 833 (La. 1987)); *see also Great Am. Ins. Co. v. McElwee Bros., Inc.*, 106 F. App'x 197, 200 (5th Cir. 2004) ("Under Louisiana law, indemnity provisions are construed in accordance with general rules governing contract interpretation."); *Berry v. Orleans Parish Sch. Bd.*, 830 So.2d 283, 285 (La. 2002) ("In interpreting contracts, including indemnity clauses, we are guided by the general rules contained in articles 2045–2057 of the Louisiana Civil Code."). *Accord Liberty Mut. Ins. Co. v. Integrated Pro Servs., LLC*, No. 14-1418, 2015 WL 3620147, at *2 (E.D. La. June 9, 2015) (Africk, J.).

---

[37] R. Doc. No. 36-3, at 5.

Accordingly, indemnity contracts "will be enforced as written unless they run counter to law or violate well-defined public policy or good morals." *Am. Contractors Indem. Co. v. R.E. Jenkins, Inc.*, 2015 WL 2184293, at *4 (M.D. La. May 8, 2015) (quoting *Fidelity & Deposit Co. of Maryland v. Thieme,* 193 So. 496, 497 (La. App. 2d Cir. 1940)). Courts recognize that "the principal and indemnitors can be bound to the surety in any manner they elect," *id.* (quoting *Abbott v. Equity Grp., Inc.,* 2 F.3d 613, 627 (5th Cir.1993)), and will not disturb the terms of the agreement unless there is a showing of fraud or bad faith. *See, e.g.*, *Liberty Mut. Ins. Co. v. Integrated Pro Servs., LLC*, 2015 WL 3620147, at *3; *Gray Ins. Co. v. Terry*, No. 07-1523, 2014 WL 906481, at *7 (W.D. La. Mar. 6, 2014), *aff'd,* 606 F. App'x 188 (5th Cir. 2015).

The Court finds that ACIC has adduced sufficient evidence to demonstrate that it is entitled to its requested relief under the Indemnity Agreement, except as to its claim for "additional expenses" relating to the Westwego Bonds in the amount of $657.74,[38] as explained below. The Indemnity Agreement grants ACIC the "sole and absolute discretion" to settle any claims arising in connection with the Bonds issued to Galaforo Construction.[39] The Agreement explicitly states that ACIC may seek the relief it requests here, including attorneys' fees and expenses arising from the present litigation.[40] There is no indication that ACIC has made any claims fraudulently or in bad faith. Finally, the Agreement states that "an itemized, sworn statement of the

---

[38] R. Doc. No. 36-1, at 8.
[39] R. Doc. No. 36-3, at 2.
[40] *Id.*

11

amount of any [] payment [by ACIC], invoice(s) or other evidence of such payment shall be prima facie evidence of the fact and the amount of such payment."[41] ACIC has submitted such evidence for each of its claimed expenses, except as to its claim for "additional expenses" relating to the Westwego Bonds in the amount of $657.74.[42] Accordingly, the Court will enter summary judgment in favor of ACIC and against Paul Galaforo in the principal amount of $3,126,903.05—which is ACIC's total claimed costs and expenses ($3,127,560.79) less the amount of $657.74.

## IV.  CONCLUSION

Having considered ACIC's motion and accompanying exhibits, as well as the applicable law, the Court finds that the undisputed facts demonstrate that ACIC is entitled to judgment as a matter of law. Accordingly,

**IT IS ORDERED** that the motion for summary judgment is **GRANTED** and that judgment shall be entered in favor of ACIC and against Galaforo in the principal amount of $3,126,903.05, plus interest from the date of each payment, with the interest rate determined pursuant to Louisiana law.

New Orleans, Louisiana, December 20, 2021.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[41] *Id.* at 4.
[42] The claim for additional expenses relating to the Westwego Bonds in the amount of $657.74 is supported only by the Yi Affidavit, R. Doc. No. 36-2 ¶ 41, which does not provide any further detail regarding the nature of these expenses. Accordingly, the Court will not award this amount to ACIC.